UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LEO PERRERO,

      Plaintiff,

v.                                   Case No.: 6:16-CV-112-Orl-31TBS

HCL, INC., and WALT DISNEY WORLD,

      Defendants.
_____/

## HCL AMERICA, INC.'S DISPOSITIVE MOTION TO DISMISS COMPLAINT

Defendant HCL America, Inc. ("HCLA")[1] respectfully moves to dismiss Plaintiff's

Complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P.

12(b)(6).  Because the supposed wrongs the Complaint alleges rest entirely on Plaintiff's

misunderstanding of the applicable immigration law, he will be unable to cure its deficient

allegations by amendment.  Therefore, HCLA asks the Court to dismiss the Complaint with

prejudice.

## I.   INTRODUCTION

HCLA, established in 1989 and headquartered in Sunnyvale, California, provides

comprehensive IT services to other companies.  Plaintiff Leo Perrero, who allegedly worked in

Walt Disney Parks and Resorts U.S., Inc.'s ("WDPR's") IT department in Orlando until January

2015, claims he was terminated and replaced by an H-1B visa holder employed by HCLA.

Compl. ¶ 21.  He seeks damages and injunctive relief from HCLA and WDPR on the theory that

in submitting labor condition applications for its H-1B workers, HCLA made false statements on

---

[1] The Complaint incorrectly names "HCL Inc." as a defendant.  HCLA's and WDPR's consent motion to substitute HCL America, Inc. and Walt Disney Parks and Resorts U.S., Inc. as the defendants is pending.  ECF No. 12.

immigration forms as part of an association between HCLA and WDPR that violated the

Racketeer Influenced and Corrupt Organization Act ("RICO") and Florida civil conspiracy law.

This Court should dismiss the Complaint because Plaintiff's claims are based on a

fundamental misunderstanding of immigration law.  Of the three allegedly false statements he

claims HCLA "would have had to" make or "must have" made on immigration forms, one

statement was, in fact, not false under a proper understanding of the law, and the other two were

not made at all.  Compl. ¶¶ 16, 17.  Shorn of the predicate unlawful acts needed to sustain his

RICO claim (Claim I), RICO conspiracy claim (Claim II), and Florida civil conspiracy claim

(Claim III), the Complaint fails to state any claim upon which relief can be granted.

First, Plaintiff erroneously asserts that the law required HCLA to attest on the U.S.

Department of Labor's ("DOL's") Form 9035 & 9035E (Labor Condition Application for

Nonimmigrant Workers) ("LCA form") that its employees for whom it sought H-1B visas would

not adversely affect the "working conditions" of *WDPR* employees.  Compl. ¶ 17.  In fact, as the

governing DOL regulation makes clear, the Employer Labor Condition Statements on the LCA

form say only that HCLA's H-1B visa holders will not adversely affect the working conditions

of *other HCLA employees*.  Plaintiff does not allege that HCLA made any false statement about

HCLA's own employees' working conditions.  His allegation that HCLA's statement was false

stems from his mistaken understanding that the statement on the LCA form applied to WDPR's

employees.  But under the applicable DOL regulations, it applied only to HCLA's employees.

Further, Plaintiff's allegation rests on a misunderstanding of the term "working conditions,"

which does not reach job displacement.  Plaintiff's allegation that HCLA's statement was false

rests solely on his misunderstanding of the law.

Second, Plaintiff misreads the requirement that "H-1B dependent" employers state H-1B visa holders will not displace U.S. workers.  In fact, the displacement certification applies only to such an employer's ***non-exempt*** employees in H-1B status.  *See* 20 C.F.R. §§ 655.738(d) and 655.737(a).  But as Plaintiff concedes and Exhibit A confirms, HCLA hired only ***exempt*** H-1B employees.  *See* Compl. ¶ 11 n.3; Ex. A.[2]  The form and DOL regulations, accordingly, did not require HCLA to make any statement about whether or not it had inquired if essentially equivalent ***WDPR*** employees would be displaced—let alone whether ***WDPR*** employees would, in fact, be displaced.  Indeed, as the completed forms show, HCLA made no such statement.  *See* Ex. A.  Plaintiff's allegation that HCLA "must have" done so is wrong because Plaintiff misstates the law.  Compl. ¶ 17.

Third, Plaintiff alleges, in his incorrect description of the "regular application process for a H1B visa," that "[s]ponsoring employers signed the ETA Form 750," and certified that the position "is open to any qualified U.S. worker."  Compl. ¶ 11 (pp. 3, 5-6).  Again misapprehending immigration law, Plaintiff fails to understand that DOL quit using Form ETA 750 almost entirely in 2005.  *See* Permanent Labor Certification Details, U.S. Dep't of Labor (updated  Feb. 25, 2016) at https://www.foreignlaborcert.doleta.gov/perm_detail.cfm and *infra* at 13 (quoting DOL website).[3]  And even then, Form ETA 750 was not used in the ***temporary*** H-1B

---

[2] Although Plaintiff's concession that HCLA hired only exempt H-1B employees makes it unnecessary for the Court to consider the LCA forms HCLA filed, HCLA attaches as Exhibit A the LCA forms it filed that supported its petitions for H-1B employees on site at WDPR as of January 30, 2015 (the date Plaintiff alleges he was displaced), along with the Declaration of Prasath Panneerselvam authenticating them.  A document attached to a motion to dismiss may be considered if the document is central to the plaintiff's claim and its authenticity is not challenged. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002)).  Here, while Plaintiff's Complaint fails to state a claim regardless of whether the LCA forms as filed are considered, attaching them is nonetheless appropriate because they are central to Plaintiff's case and will make it easier for the Court to follow Plaintiff's allegations about what the law supposedly required HCLA to state on the LCA forms and Defendants' showing in this motion what the law actually requires.

[3] Form ETA 750 remains in use only for a narrow range of permanent labor certification filings for certain team-based professional athletes.  The form was discontinued for use in certain agricultural and seasonal temporary work

nonimmigrant labor condition application process he complains of here, but was used mainly in the **permanent** ("green card") immigrant labor certification process.  The Complaint's allegation that HCLA "would have had to complete and file" Form ETA 750 thus lacks any plausible basis.

Thus, Plaintiff's claims that HCLA violated RICO and Florida civil conspiracy law rest on an incorrect understanding of the immigration law that furnishes the alleged predicate offense—false statements on immigration forms—needed to support his claims.  Plaintiff has plausibly alleged no unlawful act, and his Complaint therefore alleges no claim, under RICO or Florida civil conspiracy law, upon which relief can be granted.

While the lack of a plausibly alleged predicate offense alone requires that the Complaint be dismissed, the Complaint fails to state a claim for other reasons as well.  First, Perrero failed to exhaust his administrative remedies.  The DOL investigated his complaint and determined on January 19, 2016 "that there is no violation."[4]  A hearing before an Administrative Law Judge— a mandatory step before judicial review—has not yet been held.  Second, the Complaint fails to allege an association-in-fact RICO enterprise or a RICO or civil conspiracy.

## II.    **BACKGROUND**

### A.    **The H-1B Visa Program Requires Employers Like HCLA that Hire Exempt H-1B Employees to State Only that Their Own Non-H-1B Employees Will Not Be Adversely Affected By H-1B Visa Holders.**

To allow a limited number of professional workers from around the world to work in the United States, the Immigration and Nationality Act ("INA") permits employers to petition for nonimmigrant workers to obtain H-1B visas.  *See* 8 U.S.C. § 1101(a)(15)(H)(i)(b).  U.S. businesses may hire H-1B visa holders by first filing with DOL a Form ETA 9035, or the

---

categories, not relevant here, in 2009.  *See* Foreign Labor Certification Forms, U.S. Dep't of Labor (last visited May 12, 2016), https://www.foreignlaborcert.doleta.gov/form.cfm.

[4] *See infra* at 18-20.

electronic version ETA Form 9035E (collectively, Labor Condition Application for Nonimmigrant Workers), the "LCA form" mentioned earlier. 8 U.S.C. § 1182(n). Section H of the LCA form requires an employer of an H-1B visa holder to state that it "will provide working conditions for such a nonimmigrant that will not adversely affect the working conditions of workers similarly employed." 8 U.S.C. § 1182(n)(1)(A)(ii); Ex. A (LCA forms as filed § H, p. 3 of 6). DOL regulations provide that H-1B employers satisfy this requirement "when the employer affords working conditions to *its* H-1B nonimmigrant employees on the same basis and in accordance with the same criteria as it affords to *its U.S. worker employees* who are similarly employed, and without adverse effect upon the working conditions of such U.S. worker employees." 20 C.F.R. § 655.732(a) (emphasis added). In other words, an employer must not hire H-1B visa holders who will adversely affect its own U.S. employees' working conditions.

HCLA is an "H-1B dependent" employer because H-1B nonimmigrant workers exceed 15 percent of its full-time equivalent workforce. 8 U.S.C. § 1182(n)(3); 20 C.F.R. § 655.736(a)(1); Compl. ¶ 11 (p. 5) (alleging HCLA is "believed to be" an H-1B dependent employer); *see also* Ex. A (LCA forms as filed § I, p. 4 of 6, acknowledging H-1B dependent status). An "H-1B dependent" employer that applies for *non-exempt* H-1B visa holders must make certain statements concerning the "displacement" of U.S. workers. 8 U.S.C. §§ 1182(n)(E)(i), (F); *see* Ex. A (LCA forms as filed § I, p. 4 of 6); *see also* ETA Form 9035CP (instructions for completing ETA Form 9035 & 9035E) attached to Complaint at ECF No. 1-2 , p. 8 of 21 (requiring non-displacement statement only for non-exempt workers). But H-1B dependent employers that hire *exempt* workers—those who earn $60,000 or more per year or hold a master's or higher degree in a relevant field, as HCLA did here—do not and need not make any statement about the displacement of U.S. workers. 8 U.S.C. § 1184(i); 20 C.F.R.

§ 655.737; Compl. ¶ 11 n.3 (alleging HCLA hired exempt employees); *see also* Ex. A (leaving non-displacement statement in Section I, p. 4 of 6, blank).

## B.        The Complaint's Deficient Allegations

The Complaint[5] asserts three claims against HCLA: (1) violation of RICO; (2) conspiracy with WDPR to violate RICO; and (3) common law conspiracy with WDPR under Florida law to do the same thing alleged to violate RICO.  Compl. ¶¶ 39, 66, 71.  All rely on the same three allegedly false statements on immigration forms.

In Claim I, Plaintiff asserts that HCLA and WDPR created an "HCL-Disney Enterprise" that "existed for a common purpose, i.e., for the economic benefit and gain of its participant entitles," Compl. ¶ 41, and that HCLA violated RICO, 18 U.S.C. § 1962(c), by "the attesting of false statements on ETA Forms 750A and 9035/9035E, for the purpose of completing H1B visas for hundreds of foreign workers when HCL knew, or consciously avoided the fact, that DISNEY would be adversely affecting the working conditions of similarly situated employees .…" Compl. ¶ 45.  But the allegation in Paragraph 45 that HCLA made false statements on immigration forms—the essential alleged predicate offense to this asserted RICO violation—rests on Paragraph 11's inaccurate description of "the regular application process for a H-1B visa" and the three statements HCLA "would have had to" make or "must have" made.  Compl. ¶¶ 16, 17.

In Claim II, Plaintiff alleges that HCLA and WDPR together violated RICO's conspiracy section, 18 U.S.C. § 1962(d), by conspiring to do what is alleged in Count I.  The essential predicate offense is the same as in Count I—making false statements on immigration forms.

---

[5] HCLA accepts the Complaint's factual allegations as true for purposes of this motion only, as it must, but need not accept "mere conclusory statements."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In Claim III, Plaintiff alleges that HCLA and WDPR are liable under Florida law for engaging in a common-law conspiracy to do what is alleged in Count I.  Again, the essential predicate offense is the same as in Count I.

The allegations of false statements in all three claims proceed from Plaintiff's misunderstanding of immigration law.  When the law is properly understood, no false statement is alleged.

## III.   STANDARD OF REVIEW UNDER RULE 12(b)(6) AND 9(b)

The factual allegations of a complaint must go beyond a "speculative," "conceivable," or "possible" narrative and present "a claim for relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 556-57, 566-67, 570 (2007).  The Court's focus on a 12(b)(6) motion properly looks to well-pled facts rather than legal conclusions, and those factual averments must give rise to a genuine inference that plaintiff has a right to recover, *i.e.,* must "permit the court to infer more than the mere possibility of misconduct."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  These pleading rules apply with special force in RICO cases: "Because the 'mere assertion of a RICO claim … has the almost inevitable stigmatizing effect on those named as defendants, … courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'"  *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997).

Claims of misrepresentation or fraud—including those made here that assert RICO claims based on allegedly false statements on LCA forms—trigger Fed. R. Civ. P. 9(b)'s heightened pleading standard.  *See Club Car, Inc. v. Club Car (Quebec) Import, Inc.*, 276 F. Supp. 2d 1276, 1283 (S.D. Ga. 2003), *aff'd*, 362 F.3d 775 (11th Cir. 2004); *Ambrosia Coal & Constr. Co v. Pages Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007); *Simpson v. Sanderson Farms, Inc.*, No. 7:12-CV-28, 2012 U.S. Dist. LEXIS 130501, at *30-31 (M.D. Ga. Sept. 13,

2012) (applying Rule 9(b) to claims of false statements on employment eligibility certifications constituting predicate RICO acts); *see also*, *e.g.*, Compl. ¶¶ 41, 53, 59 (alleging HCLA "falsely and fraudulently attested" and "knowingly attested to false statements," and "attested to false and fraudulent information").  This requires pleading "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendant['s] allegedly fraudulent acts, when they occurred, and who engaged in them."  *Hopper v. Solvay Pharms., Inc.*, 588 F.3d 1318, 1324 (11th Cir. 2009) (quotation marks omitted); *see also Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997)).

## IV.   ARGUMENT

### A.   Plaintiff's RICO Claims Fail Because They Do Not Allege the Requisite Predicate Offense.

This Court should dismiss the RICO claims (Claims I & II) because the Complaint does not plausibly allege any requisite unlawful predicate acts.  To state a RICO claim under 18 U.S.C. § 1962(c) (Count I), Plaintiff must allege facts that would establish the "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Williams v. Mohawk Indus., Inc.*, 465 F.3d 1277, 1282 (11th Cir. 2006).  To obtain monetary relief, a plaintiff also must plead injury to his business or property "by reason of" the RICO violation.  *Id.* at 1283; *see also Se. Laborers Health & Welfare Fund v. Bayer Corp.*, 655 F. Supp. 2d 1270, 1276 (S.D. Fla. 2009). RICO defines and limits "racketeering activity"—the source of the predicate-offense requirement—to include only certain "specified state-law crimes, any 'act' indictable under various specified federal statutes, and certain federal 'offenses.'"  *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 232 (1989); 18 U.S.C. § 1961(1).

Making a false statement on an immigration form is such an offense.  *See* 18 U.S.C. § 1546(a) (prohibiting "knowingly subscrib[ing] as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder").

Here, Plaintiff attempts, but fails, to allege that HCLA engaged in racketeering activity by committing this predicate offense.  He fails for two reasons:

(1)  One of HCLA's allegedly false statements—that H-1B employees would not adversely affect the working conditions of similarly situated employees—is demonstrably not false because (a) the statement concerned only the working conditions of HCLA's employees (not WDPR's) and (b) "working conditions" under the immigration law does not include displacement.  Hence, Plaintiff does not plausibly allege a false statement due to his error of law.

(2)  HCLA did not even make the other two allegedly false statements.  One of those statements was on a section of the LCA form that HCLA did not complete because the law did not require it to do so.  The other was on a different form that HCLA did not file because that form does not apply to H-1B visas and DOL retired it for its intended permanent labor certification purpose in 2005, except for a narrow category of professional athletes.  Again, Plaintiff does not plausibly allege any false statements due to his error of law.

## 1.    HCLA Stated on the LCA Form Only that HCLA's H-1B Employees Would Not Adversely Affect Other HCLA Employees—a Statement Not Alleged to be False.

Plaintiff first alleges that HCLA "must have" attested on the LCA form that its H-1B employees would not adversely affect the "working conditions" of WDPR employees.  Compl. ¶ 17.  But Plaintiff misinterprets the Employer Labor Condition Statement in Section H of the LCA form and ignores the DOL regulation it implements.  In Section H, the employer, HCLA here, states only that the "working conditions" for H-1B employees will not adversely affect

-9-

other HCLA employees—*not* WDPR employees.  Under the relevant regulation, the no-adverse-effect requirement is "satisfied when the employer affords working conditions to *its* H–1B nonimmigrant employees on the same basis and in accordance with the same criteria as it affords to *its U.S. worker employees* who are similarly employed, and without adverse effect upon the working conditions *of such U.S. worker employees*."  20 C.F.R. § 655.732(a) (emphasis added); *see also* 20 C.F.R. § 655.732(b) (mandating that in an enforcement action, employers produce documentation of working conditions: "the employer shall produce documentation to show that it has afforded *its* H-1B nonimmigrant employees working conditions on the same basis and in accordance with the same criteria as it affords *its U.S. worker employees*.") (emphasis added).

According to the Complaint, HCLA's no-adverse-effect-on-working-conditions statement was false because HCLA's H-1B employees allegedly replaced **WDPR** employees and thus adversely affected those **WDPR** employees' working conditions.  Complaint ¶ 21.  But, as the DOL regulations quoted above show, the statement HCLA made says nothing about WDPR's employees, and the Complaint does not allege the statement was false as to HCLA's own employees.  Thus, Plaintiff has failed to adequately allege a false statement by HCLA and, in fact, cannot allege a false statement given the regulations and the LCA form's requirements.

Even if the no-adverse-effect-on-working-conditions statement applied to WDPR employees, HCLA's statement still could not be alleged to be false because the term "working conditions" in the LCA form does not reach job displacement.  *See* Ex. A (LCA forms as filed § H, p. 3 of 6).  Under the governing regulations, "working conditions" encompass "matters such as hours, shifts, vacation periods, and benefits such as seniority-based preferences for training programs and work schedules."  20 C.F.R. § 655.732(a); *see also* Alien Temporary Employment Labor Certification Process, 56 Fed. Reg. 11705, 11711 (Mar. 20, 1991) (stating that "the Act's

intention regarding prevailing working conditions is to determine them in a like manner as

current regulations set forth in 20 C.F.R. 656.24(b)," which list the following considerations:

labor market information, the special circumstances of the industry, organization, and/or

occupation, the prevailing wage in the area of intended employment, and prevailing working

conditions, such as hours, in the occupation).

A plain reading of the regulations shows that Plaintiff misunderstands the law and fails to

state a claim based on HCLA's working-conditions statement.

### 2.    HCLA Made No Statement About Displacement of Employees In Another Employer's Workforce.

Second, Plaintiff claims HCLA falsely stated in Section I of the LCA form that its H-1B

visa holders would not displace WDPR employees.  Compl. ¶¶ 43, 45.  But Plaintiff alleges

HCLA "must have signed and swore on oath on LCAs Forms 9035 and 9035E that … U.S.

workers would <u>not</u> be displaced" only because he erroneously thinks immigration law requires

H-1B employers of ***exempt*** employees to make a statement about displacement.  Compl. ¶ 17.  In

fact, the law requires no such thing.  *See*, *e.g.*, *Watson v. Chief Admin. Law Judge*, No. 10-40411,

2010 WL 4033991, at *2 (5th Cir. Oct. 15, 2010) (affirming dismissal of claim that employer

and potential employer should be held liable for misrepresentations regarding displacement

where neither employer had to make displacement statements); *Watson v. United States*, No. 06-

716C, 2007 WL 5171595, at *6-8 (Fed. Cl. Jan. 26, 2007), *aff'd*, 240 F. App'x 410 (Fed. Cir.

2007) (describing claim that employer violated provisions of § 1182(n)(1) as "meritless" because

the employer was not subject to that provision's no-displacement-of-U.S.-workers requirements).

Section I, subsection 1, question 3, of the LCA form  asks whether the "employer will use

this application <u>ONLY</u> to support H-1B petitions … for exempt H-1B nonimmigrants."  The

instruction that follows tells H-1B dependent employers to make the non-displacement

statements only for **non-exempt** employees.  *See* Ex. A (LCA forms as filed § I, p. 4 of 6).  As

Plaintiff concedes, Compl. ¶ 11 n.3, HCLA hired only **exempt** employees who earned at least

$60,000 per year or held a master's or higher degree in a relevant field.  *See* 8 U.S.C. § 1184(i);

20 C.F.R. § 655.737(b).  That concession is by itself a sufficient basis to reject Plaintiff's

allegations regarding a supposed misstatement concerning displacement.  The completed LCA

forms confirm no such certification was made.  *See* Ex. A.  Therefore, HCLA was not required

to, and did not, make any statement about displacing U.S. workers.

As before, Plaintiff's allegation that HCLA "must have" made a false statement stems

from his misunderstanding of immigration law.  Compl. ¶ 17.  This second purported false

statement furnishes no predicate offense either.

### 3.    Obsolete Form ETA 750 Was Inapplicable to H-1B Employers; HCLA Did Not File It and Thus Made No Misrepresentation On It.

Finally, Plaintiff alleges as part of his inaccurate description of the "regular application

process for a H1B visa," that HCLA, like all  "[s]ponsoring employers signed the ETA Form

750."  Compl. ¶ 11 (pgs. 3, 5-6).  He alleges that HCLA "would have had to" file this form,

Compl. ¶ 16, but he is simply wrong on the law.

First, Form ETA 750 has never been used for **temporary** H-1B visa applications, and has

instead been used mainly for **permanent** ("green card") labor certification applications.  *See*

*supra* at 3-4 & n.3.  The regulations governing employer statements for temporary

nonimmigrants, which appear at 20 C.F.R. Part 655, Subpart H ("Labor Condition Applications

and Requirements for Employers Seeking To Employ Nonimmigrants on H-1b Visas in

Specialty Occupations and as Fashion Models, and Requirements for Employers Seeking To

Employ Nonimmigrants on H-1b1 and E-3 Visas in Specialty Occupations"), contain no

requirement that any employer file Form ETA 750.  Indeed, DOL does not accept Form ETA

750 for H-1B applications.

Second,  DOL stopped accepting Form ETA 750 in March 2005 even for permanent

labor certifications (except for a narrow category of professional athletes), when it revised the

regulations for receiving labor certifications for employment-based green card applications.  *See*

Permanent Labor Certification Details, U.S. Dep't of Labor (updated  Feb. 25, 2016),

https://www.foreignlaborcert.doleta.gov/perm_detail.cfm ("As of March 28, 2005, ETA Form

750 applications were no longer accepted under the regulation in effect prior to March 28,

2005").

Without a predicate offense, the Complaint states no RICO claim upon which relief can

be granted.

### B.      Plaintiff's Florida Common Law Conspiracy Claim Fails for Lack of Any Allegedly Unlawful Act.

Like his RICO claims, Plaintiff's civil conspiracy claim under Florida law (Count III)

fails to allege an unlawful act and therefore fails to state a claim upon which relief can be

granted.

Under Florida law, a civil conspiracy requires "(1) an agreement between two or more

parties (2) to do an unlawful act by unlawful means (3) the committing of an overt act in

pursuance of the conspiracy and (4) damages to the plaintiff as a result of the act."  *Vista Mktg.,*

*LLC v. Burkett*, 999 F. Supp. 2d 1294, 1297 (M.D. Fla. 2014) (quoting *Bankers Life Ins. Co. v.*

*Credit Suisse First Boston Corp*., 590 F. Supp. 2d 1364, 1368 (M.D. Fla. 2008)) (citing *Walters*

*v. Blankenship*, 931 So. 2d 137, 140 (Fla. Dist. Ct. App. 2006)).  In Florida, "conspiracy is not a

freestanding tort, but rather, 'a cause of action for civil conspiracy exists … only if the basis for

the conspiracy is an independent wrong or tort which would constitute a cause of action if the

-13-

wrong were done by one person." *SFM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 764 F.3d 1327, 1339 (11th Cir. 2014) (quoting *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. D.C.A. 1997) (further citation and internal quotation omitted)).

Once again, Plaintiff's claims rest on a misunderstanding of the law.  Plaintiff alleges that HCLA and WDPR conspired to make "false and fraudulent representations of material fact, which is an unlawful act under Florida law."  Compl. ¶ 71.  But he incorporates by reference the same three allegedly false representations on immigration forms underlying his RICO claims.  Compl. ¶ 69.  They fare no better here.  Having failed to allege any unlawful acts, Plaintiff has failed to allege a claim under Florida law upon which relief can be granted, when applicable immigration law is correctly understood.

*       *       *

The lack of a plausible predicate offense (or unlawful act in Florida civil conspiracy parlance) requires that Plaintiff's Complaint be dismissed for failure to state a claim upon which relief can be granted.  That issue is dispositive, and the Court need consider nothing more.  The Complaint, however, fails to state a claim for other reasons as well, which HCLA demonstrates below.

### C.       Plaintiff Has Not Exhausted His Administrative Remedies and Has No Private Right of Action Regarding the LCA Forms.

The Court should dismiss Plaintiff's claims because he failed to exhaust his administrative remedies.  Plaintiff's asserted predicate acts arise under a section of the INA, 8 U.S.C. § 1182(n), which, in addition to setting forth the requirements for H-1B labor condition applications just discussed, establishes an administrative procedure for remedying violations of those requirements.  *Id.* § 1182(n)(2)(A) (directing the Secretary of Labor to "establish a process for the receipt, investigation, and disposition of complaints respecting a petitioner's failure to

-14-

meet a condition specified in an application … or a ***petitioner's misrepresentation of material facts in such an application***." (emphasis added)); 20 C.F.R. §§ 655.800-855 (regulations governing complaint process); *see also* Alien Temporary Employment Labor Certification Process, 56 Fed. Reg. 11705, 11710 (Mar. 20, 1991) ("The Act also provides for the filing of complaints and imposition of penalties for misrepresentation or failure to carry out the attested actions [relating to wages and working conditions]"); *Gupta v. Perez*, 101 F. Supp. 3d 437, 446 (D.N.J. 2015), *aff'd sub nom. Gupta v. Sec'y U.S. Dep't of Labor*, No. 15-3194, 2016 WL 2587279 (3d Cir. May 5, 2016) (stating that the statute gives DOL the authority to handle "a petitioner's misrepresentation of material facts in an LCA.").

"Any aggrieved party" may submit a complaint to the DOL's Wage and Hour Division, which then determines whether the complaint warrants an investigation.  20 C.F.R. §§ 655.806(a), 806-807; *see also id.*  § 655.715 (defining "aggrieved party" to include a "worker whose job, wages, or working conditions are adversely affected by the employer's alleged non-compliance with the labor condition application").  Indeed he must submit an administrative complaint because exhaustion of administrative remedies before suing in court is mandatory, as shown below.  When the DOL investigates, it determines whether LCA violations occurred and what remedy is appropriate.  *Id.* §§ 655.805(a), 806(b), 810(e)(2).  If dissatisfied, the aggrieved party may seek review before an Administrative Law Judge ("ALJ"), *id.* §§ 655.820–655.835, and may petition the DOL's Administrative Review Board to review an ALJ's decision.  *Id.* §§ 655.840, 655.845.  Finally, federal district courts have jurisdiction to review final agency action. *Id.* § 655.850.

In light of this administrative process, courts routinely hold that they have no authority to review in the first instance claims that an employer made misrepresentations in its LCA forms.

*See Watson v. Chief Admin. Law Judge*, No. 10-40411, 2010 WL 4033991 (5th Cir. Oct. 15,

2010); *Watson v. Bank of Am.*, 196 F. App'x 306 (5th Cir. 2006); *Venkatraman v. REI Sys., Inc.*,

417 F.3d 418 (4th Cir. 2005).  The Fourth Circuit in *Venkatraman* agreed that a U.S. worker who

claimed an H-1B nonimmigrant displaced him had no cause of action against his employer for

purported misrepresentations in its LCA forms to enable it to hire less expensive foreign

workers.  *Venkatraman*, 417 F.3d at 419, 423.  The court reasoned that (1) the claims were

subject to administrative exhaustion, (2) the plaintiff did not administratively exhaust his claims,

and (3) no private right of action existed to allow him to pursue his claims in federal court.  *Id.* at

423-24.  Similarly, the Fifth Circuit determined that "§ 1182(n) does not create a private cause of

action on behalf of an employee who was allegedly fired or not hired in favor of an H-1B foreign

worker."  *Watson*, 2010 WL 4033991, at *2; *see also, e.g., Watson*, 196 F. App'x at 307 (holding

that the plaintiff "had no private right action in the first instance under 8 U.S.C. § 1182(n)" to

pursue a claim that "his former employer … terminated him improperly in  favor of  H-1B

nonimmigrant visa workers").  Numerous district courts agree.  *See, e.g., Biran v. JPMorgan

Chase & Co.*, No. 02-5506, 2002 WL 31040345, at *1 (S.D.N.Y. Sept. 12, 2002) (dismissing, for

failure to exhaust, H-1B claims against prospective employer alleging misuse of H-1B visa

program by "consulting firms used by Chase"); *Shah v. Wilco Sys., Inc.*, 126 F. Supp. 2d 641,

648 (S.D.N.Y. 2000) (stating that this regulatory process indicates "Congress' intent to limit the

enforcement for alleged violations of Section[] 1182(n) … to the administrative agencies in

charge of the processes, and only implicate judicial review once the administrative procedure has

been exhausted"); *Shibeshi v. Alice Lloyd College*, No. 11-101, 2011 WL 4970781, at *3 (E.D.

Ky. Oct. 19, 2011).

It makes no difference to this exhaustion analysis that Plaintiff does not sue directly under the INA, but rather asserts federal and state law claims premised on purported misrepresentations in HCLA's LCA forms.  Section 1182(n) and its implementing regulations provide administrative procedures to challenge alleged Section 1182(n) violations.  This "leaves no room" for RICO or state law claims.  *See Brink v. Continental Ins. Co.*, 787 F.3d 1120, 1126-27 (D.C. Cir. 2015) (citing *Danielson v. Burnside-Ott Aviation Training Ctr., Inc.*, 941 F.2d 1220, 1226 (D.C. Cir. 1991)).  And where a comprehensive administrative process provides no private right of action, a "private civil action, even couched in RICO terms, will not lie."  *See Bridges v. Blue Cross and Blue Shield Ass'n*, 935 F. Supp. 37, 41 (D.D.C. 1996) (quoting *Danielson*).  Otherwise, carefully structured federal regulatory schemes could be circumvented entirely.  Accordingly, in the Eleventh Circuit, "non-compliance with a regulatory statute affording administrative remedies cannot form the basis for a civil RICO claim."  *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1227 (11th Cir. 2002) (citing *Danielson*).

Plaintiff cannot disguise unexhausted 1182(n) claims as RICO or other conspiracy claims.  Indeed, the Southern District of New York recently dismissed a similar RICO claim premised on alleged misrepresentations in an LCA form because the plaintiff failed to exhaust her administrative remedies.  *See Palmer v. Trump Model Mgmt., LLC*, No. 14 CIV. 8307(AT), 2016 WL 1544740, at *3-5 (S.D.N.Y. Mar. 23, 2016).  Like Perrero, the plaintiff "cast[] Defendants' alleged violation of the INA—lying on the labor application … — as a RICO violation."  *Id.* at *4.  "The RICO statute, however, [was] not the proper avenue for relief."  *Id.* Because the plaintiff failed to exhaust her administrative remedies, she was "barred from asserting an INA claim in [] court."  *Id.* ("Plaintiff's RICO claim, which is based on Defendants' alleged misrepresentations in her [LCA form], falls squarely within the scope of the INA.

Allowing Plaintiff to use the civil RICO statute to redress substantive violations of the INA would thwart Congress' careful, comprehensive scheme to remedy violations falling within the INA's scope.") (quotation omitted); *see also Watson*, 196 F. App'x at 307 (dismissing claim against prospective employer that it was conspiring to hire H-1B nonimmigrant workers because no private right of action exists); *Gordon v. Kaleida Health*, 847 F. Supp. 2d 479, 489 (W.D.N.Y. 2012) (courts "routinely have found federal RICO claims precluded where the source of the asserted right is covered by a more detailed federal statute").

Courts considering other causes of action premised on INA violations agree. "If the Court allowed plaintiffs to simply restyle their complaints to avoid exhaustion, it would nullify the INA." *Shibeshi*, 2011 WL 4970781, at *3. *See, e.g.*, *Compunnel Software Group, Inc. v. Gupta*, No. 14-479, 2015 WL 1224298, at *3 (S.D.N.Y. Mar. 17, 2015) (holding that allowing a state law claim premised on alleged LCA form misrepresentations "would subvert the federal statutory scheme"); *Panwar v. Access Therapies, Inc.*, 975 F. Supp. 2d 948, 956 (S.D. Ind. 2013) ("a plaintiff may not circumvent the non-availability of a private cause of action under § 1182(n) of the INA simply by pleading the same claim under a different cause of action."); *Shibeshi v. Philander Smith Coll.*, No. 4:11CV00513 JMM, 2011 WL 4529455, at *2 (E.D. Ark. Sept. 30, 2011), *aff'd*, 467 F. App'x 544 (8th Cir. 2012) (holding that "Plaintiff is attempting to circumvent the non-availability of a private cause of action under § 1182(n)" by premising a breach of contract claim on a violation of the INA).

Here, the administrative process is ongoing. DOL completed an investigation of HCLA's compliance with the INA's H-1B provisions and determined on January 19, 2016 "that there is no violation." *See* DOL Wage and Hour Division Administrator's determination, attached as Ex.

2 to Ex. B, the Declaration of R. Blake Chisam, HCLA's outside lawyer.[6]  The DOL notice

initiating the investigation, attached as Ex. 1 to Ex. B (Chisam Decl.), does not identify the

complainant, but on May 4, 2016 the DOL issued a Notice of Assignment to an Administrative

Law Judge identifying Mr. Perrero as the "Prosecuting Party."  The Notice advises that the

Complainant objected to the January 19, 2016 Administrator's determination and that an

Administrative Law Judge will conduct a hearing.  *See* Ex. 1 to Ex. C, the Declaration of

William Michael Battle, HCLA's in-house lawyer.[7]

This forthcoming hearing is a mandatory prerequisite to judicial review.  *See Darby v.

Cisneros*, 509 U.S. 137, 152 (1993) (agencies may adopt rule conditioning judicial review upon

administrative appeal if initial agency decision is inoperative pending appeal); 20 C.F.R.

§ 655.820(a) (DOL rule conditioning judicial review of  Administrator's determination upon

hearing before Administrative Law Judge and making determination inoperative pending

hearing).

Perrero has not exhausted his administrative remedies and has no separate private right of

action.  His attempt to pursue his claims on two tracks—one administrative and one judicial—is

wasteful and fruitless, because "judicial review" is available only "once the administrative

---

[6] The Administrator's Determination bears the date of January 19, 2015 due to a new-year error.  It was issued on
January 19, 2016, as an e-mail from the DOL investigator confirms.  *See* Ex. 3 to Ex. B (Chisam Decl.).  The DOL
documents pertaining to the investigation are properly considered on a motion to dismiss because they are central to
the plaintiff's claim and their authenticity is not challenged.  *See supra* n.2; *Universal Express, Inc. v. U.S. Secs. &
Exch. Comm'n*, 177 F. App'x 52, 53 (11th Cir. 2006) (affirming consideration of public records on motion to
dismiss); *Beepot v. J.P. Morgan Chase Nat'l Corp. Servs., Inc.*, 57 F. Supp. 3d 1358, 1366 (M.D. Fla. 2014) (same),
*aff'd*,  626 F. App'x 935 (11th Cir. 2015).

[7] The Notice of Assignment says incorrectly on p. 1 that "Respondent has requested review and a hearing," but says
on p. 2 that "Complainant served his objections to the Administrator's determination."  Of course HCLA, the
Respondent, could not have requested review because the Administrator's determination found no violation.  *See*
Ex. B (Chisam Decl.) ¶ 3.

0099998\010902\2649956v1

procedure has been exhausted." *Shah*, 126 F. Supp. 2d at 648. For this reason as well, the Court should dismiss his Complaint based on alleged violations of immigration laws.[8]

### D.     Plaintiff Has Not Alleged a Valid "Association-in-Fact" RICO Enterprise.

Plaintiff alleges an "association-in-fact" RICO enterprise composed of HCLA and WDPR. An association-in-fact enterprise requires a structure, evidenced by (1) a common purpose; (2) "relationships among those associated with the enterprise;" and (3) "longevity sufficient to permit the associates to pursue the enterprise's purpose." *Boyle v. United States*, 556 U.S. 938, 946 (2009). The "person" alleged to have violated RICO and the "enterprise" cannot be the same. *United States v. Goldin Indus., Inc.*, 219 F.3d 1271, 1275-76 (11th Cir. 2000). And a RICO enterprise must have a structure and goals separate from the alleged pattern of racketeering activity. *Ageloff v. Kiley*, 318 F. Supp. 2d 1157, 1159 (S.D. Fla. 2004). Liability thus requires showing the "defendants conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001); *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993).

Plaintiff's RICO claims fail because the alleged "enterprise" here has no existence separate and apart from Defendants' own affairs and from the alleged racketeering acts themselves. *See Goldin Indus., Inc.*, 219 F.3d at 1270-71; *Ageloff*, 318 F. Supp. 2d at 1159. "[M]erely alleging that the 'Defendants conspired with each other and with others …' does not allege an enterprise either." *Palm Beach Cty. Envtl. Coal. v. Florida*, 651 F. Supp. 2d 1328, 1349 (S.D. Fla. 2009). If the purported "enterprise" is just a name for the acts alleged, as here,

---

[8] Depending upon the precise statutory context in which a plaintiff fails to exhaust administrative remedies, a failure to exhaust may be regarded as jurisdictional. *See Weinberger v. Salfi*, 422 U.S. 749 (1975) (explicit statutory language deprived federal court of power to hear claims of absent class members relating to denial of social security benefits where they had not sought administrative relief). In other cases where the existence of an administrative remedy prompts a court to decline to imply an additional remedy, such an argument is properly considered under Rule 12(b)(6). *See Venkatraman*, 417 F.3d at 422-25. In any circumstances, if a court concludes it lacks subject matter jurisdiction, dismissal is required. Fed. R. Civ. P. 12(h)(3).

then it is not a RICO enterprise.  *See Jenkins v. Deutsche Bank Nat'l Trust Co.*, No. 07-22463, 2009 U.S. Dist. LEXIS 129921, at *21-23 (S.D. Fla. Sept. 3, 2009) (dismissing RICO claim in part because "Plaintiff does not allege the existence of an enterprise, beyond the conclusory assertion that various Defendants … form an association-in-fact").

Plaintiff alleges no facts showing that HCLA and WDPR joined together to accomplish anything other than their own business objectives.  The Complaint asserts that HCLA and WDPR have a contractual relationship and (erroneously) that HCLA made false representations on LCA forms to allow it to employ H-1B visa holders.  Facts reflecting only business relations between entities do not establish an enterprise, nor is it enough to allege that an entity with contractual relationships committed fraud.  *See Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 399-400 (7th Cir. 2009) (affirming dismissal as to alleged association-in-fact enterprise involving insurer and intermediary marketer, as their interactions were consistent with a garden variety business relationship, and the RICO claim hinged on the alleged fraud of the insurer).[9]

Moreover, the "common purpose" essential to finding an association-in-fact enterprise cannot exist where, as here, the supposed participants are pursuing their respective self-interested goals, as distinct from those of the "enterprise."  In *Ray v. Spirit Airlines, Inc.*, No. 12-61528, 2015 U.S. Dist. LEXIS 120033 (S.D. Fla. July 24, 2015), the plaintiffs alleged a RICO enterprise

---

[9] Any reliance by Plaintiff on the Eleventh Circuit's distinguishable decision in *Williams v. Mohawk Industries, Inc.*, 465 F.3d 1277 (11th Cir. 2006), would be misplaced.  There, the court found that the plaintiff adequately pled a RICO enterprise where the complaint alleged that Mohawk "conspired with recruiting agencies to hire and harbor illegal workers in an effort to keep labor costs as low as possible."  *Id.* at 1281.  Specifically, the complaint alleged that Mohawk not only engaged third-party recruiters to offer a pool of illegal workers, but also that Mohawk employees actively participated in the recruitment, "carry[ing] a supply of social security cards for use when a prospective or existing employee needs to assume a new identity."  *Id.* at 1284.  The court also found that the members of the enterprise shared a "common purpose of obtaining illegal workers for employment by Mohawk."  *Id.*  Such allegations are absent from the Complaint here where the only claim hinges on implausible assertions about misrepresentations on LCA forms and an absence of any allegation that the members of the supposed enterprise shared a common goal of finding illegal employees.  In any event, the Eleventh Circuit recently described *Mohawk* as a pre-*Twombly/Iqbal* case that "relied on the now-retired *Conley v. Gibson* standard [and therefore] does not control [the] legal analysis about the sufficiency of the pleadings in the instant case."  *Simpson v. Sanderson Farms, Inc.*, 744 F.3d 702, 714-15 (11th Cir. 2014).

made up of Spirit Airlines and Accenture/Navitaire, a Spirit consultant.  The court rejected the plaintiffs' argument that the corporate defendants constituted an enterprise and remarked that "opportunistic plaintiffs have sought to impose civil RICO liability on corporations engaged in standard commercial dealings .… [M]ost business relationships have 'purpose' and 'longevity.' Yet the goal of RICO is to combat organized crime, not to police routine commercial dealings. In concert with the 'structure' requirements, a separate 'distinctiveness' requirement provides the necessary buffer against overly broad RICO claims."  *Id.* at *13-15 (citing Pub. L. No. 91-452, 84 Stat. 922 (1970)).

Plaintiff in fact acknowledges that the alleged enterprise's purpose is no different from each party's self-interest, alleging that "[t]he 'HCL-Disney Enterprise' existed for a common purpose, i.e., ***for the economic benefit and gain of its participant entities***."  Compl. ¶ 41 (emphasis added).  Nor does the Complaint allege any facts showing that HCLA or WDPR participated in the activities of the purported enterprise for a purpose other than advancing their respective financial interests, aside from a conclusory allegation that "[o]fficials of each company engaging in the violations were not only conducting the affairs of their respective companies through the commission of section 1546 violations, but were involving themselves in the affairs of the other company .…"  Compl. ¶ 42.

Rather, what Plaintiff ***has*** alleged is a routine relationship the object of which is to allow one corporation to provide services to the other.  That is not a RICO enterprise:

> The corporate world is not always vertically integrated: every day, companies seek outside assistance for certain business ventures.  They outsource platform development, hire outside marketing consultants, and contract with cleaning companies to maintain their premises.  But these common business relationships do not, in and of themselves, constitute racketeering "enterprises" for the purpose of RICO liability under 18 U.S.C. § 1962(c).  The statute cannot be so overly broad that absurd

> consequences result—i.e., that every company with agents and employees
> is per se a member of a distinct RICO "enterprise."

*Spirit Airlines*, 2015 U.S. Dist. LEXIS 120033, at *18-19 (citations omitted).  Entering into a

contract to provide IT services to another corporation "is an activity consistent with the existence

of a business partnership, not the prototypical RICO violation in which the defendant seizes

control of an enterprise to accomplish an illegal purpose by using the enterprise's resources,

contacts, and appearance of legitimacy."  *Crichton*, 576 F.3d at 399 (citing *Fitzgerald v.

Chrysler Corp.*, 116 F.3d 225, 227 (7th Cir. 1997)).  For this additional reason, the Court should

dismiss the Complaint's RICO counts.

### E.    The Complaint Cannot State a RICO Conspiracy Claim.

Plaintiff's RICO conspiracy claim (Claim II) falls with his substantive RICO claim

(Claim I) under § 1962(c).  "Section 1962(d) of the RICO statutes makes it illegal for anyone to

conspire to violate one of the substantive provisions of RICO, including § 1962(c)."  *Gibbs v.

United States*, 865 F. Supp. 2d 1127, 1145 (M.D. Fla. 2012) (quoting *Am. Dental Ass'n*, 605 F.3d

at 1293).  "To be guilty of conspiracy … parties must have agreed to commit an act that is itself

illegal—parties cannot be guilty of conspiring to commit an act that is not itself against the law."

*Id.* (quoting *Kivisto v. Miller, Canfield, Paddock & Stone*, 413 F. App'x 136, 139 (11th Cir.

2011)).  In *Jackson v. Bellsouth Telecommunications*, 372 F.3d 1250 (11th Cir. 2004), the court

affirmed dismissal of a RICO conspiracy claim because the complaint failed to allege a

substantive RICO claim, and emphasized that "the RICO conspiracy [claim] add[ed] nothing,"

because it "simply conclude[d] that the defendants 'conspired and confederated' to commit

conduct which in itself does not constitute a RICO violation."  *Id.* at 1269; *see also Lockheed

Martin Corp. v. Boeing Co.*, 357 F. Supp. 2d 1350, 1377-78 (M.D. Fla. 2005) ("The Boeing

0099998\010902\2649956v1

Defendants are … correct in their contention that, because Lockheed Martin's underlying claims have failed, its conspiracy claim against them must also fail.").

In short, conspiracy liability under 18 U.S.C. § 1962(d) attaches only if a substantive RICO violation is established.  Here, the only alleged substantive RICO violation is premised on alleged false statements HCLA never made, when Plaintiff's misunderstanding of the relevant immigration law is corrected.  As a result, the RICO conspiracy claim (Count II) unwinds entirely.

## V.   <u>CONCLUSION</u>

Because the Complaint fails as a matter of law to allege any predicate RICO acts, unlawful acts, or an association-in-fact enterprise or conspiracy, and because Plaintiff has not exhausted his administrative remedies, the Complaint should be dismissed for failure to state a claim upon which relief can be granted.

Dated: May 13, 2016                          Respectfully submitted,


    */s/ Richard S. Dellinger*
Richard S. Dellinger, Esquire
Florida Bar No.: 179957
LOWNDES, DROSDICK, DOSTER,
  KANTOR &  REED, P.A.
215 North Eola Drive
Orlando, Florida 32801
Telephone: (407) 843-4600
Facsimile (407) 843-4444
E-mail:richard.dellinger@lowndes-law.com

and

Charles B. Casper, Esquire (admitted *pro hac vice*)
Pennsylvania Bar No.: 42784
MONTGOMERY, McCRACKEN, WALKER &
   RHOADS, LLP
123 South Broad Street
Philadelphia, Pennsylvania  19109
Telephone:  (215) 772-1500
Facsimile: (215) 772-7620
E-mail:ccasper@mmwr.com

*Attorneys for Defendant HCL America, Inc.*

-25-

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 13, 2016, I electronically filed the foregoing with the

Clerk of Court using the CM/ECF system, which will send notice of the electronic filing to:

Sara Blackwell, Esquire
THE BLACKWELL FIRM
1800 2nd Street, Suite 882
Sarasota, Florida  34236
E-mail:  sara@theblackwellfirm.com

*Attorney for Plaintiff*

Mary Ruth Houston, Esquire
Glennys Ortega Rubin, Esquire
SHUTTS & BOWEN LLP
300 South Orange Avenue, Suite 1000
Orlando, FL 32801
E-mail:  mhouston@shutts.com
E-mail:  grubin@shutts.com

David W. Ogden, Esquire (admitted *pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
E-mail:  David.ogden@wilmerhale.com

Alan Schoenfeld, Esquire (admitted *pro hac vice*)
Colin Reardon, Esquire (admitted *pro hac vice*)
WILMER CUTLER PICKERING HALE AND DORR LLP
7 World Trade Center, 250 Greenwich Street
New York, NY 10007
E-mail:  Alan.Schoenfeld@wilmerhale.com
E-mail:  Colin.reardon@wilmerhale.com

*Attorneys for Defendant Walt Disney Parks and Resorts U.S., Inc.*


  */s/ Richard S. Dellinger*
Richard S. Dellinger