UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| LEO PERRERO,<br><br>Plaintiff,<br><br>v.<br><br>HCL INC. and WALT DISNEY WORLD,<br><br>Defendants. | Case No. 6:16-CV-00112-GAP-TBS<br><br>**DISPOSITIVE MOTION** |

**DEFENDANT WALT DISNEY PARKS AND RESORTS U.S., INC.'S
DISPOSITIVE MOTION TO DISMISS AND MEMORANDUM OF LAW**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Walt Disney Parks and Resorts U.S., Inc. ("WDPR") respectfully moves for an order dismissing the Complaint with prejudice.[1]

## INTRODUCTION

In October 2014, WDPR announced a reorganization of its information-technology ("IT") department through which certain IT functions would be assumed by outside IT consulting firms. The reorganization was intended to transition WDPR's IT department from one concentrated on maintaining existing IT systems to one more focused on developing new technologies. To accomplish this, WDPR outsourced IT maintenance, quality-assurance, and related work to specialized, independent commercial vendors, including to defendant HCL America, Inc. ("HCLA"). WDPR employees affected by the reorganization were given the opportunity to apply for other jobs at WDPR and its affiliates.

---

[1] WDPR was incorrectly sued as Walt Disney World and HCL America, Inc. was incorrectly sued as HCL Inc. Defendants filed a Consent Motion for Substitution of Defendants and to Correct Defendants' Name in Complaint in order to substitute the correct entities for the ones named in the Complaint, which is pending. *See* ECF No. 12.

Although businesses in the United States commonly contract with independent vendors for IT services, Plaintiff Leo Perrero alleges that WDPR's commercial outsourcing agreement with HCLA constituted a criminal conspiracy to defraud the United States Department of Labor ("DOL"). The Complaint—which asserts a substantive claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") against HCLA alone and two conspiracy claims (under RICO and Florida civil-conspiracy law) against WDPR and HCLA—is riddled with serious legal errors and is fatally lacking in non-conclusory factual allegations. Plaintiff provides this Court with no basis to infer that a facially benign business relationship is, instead, a conspiracy to violate the law.

The Complaint fails to state a claim against WDPR and should be dismissed.

First, Plaintiff's RICO conspiracy claim must be dismissed because he fails to allege an underlying substantive RICO claim. There are three fatal flaws in the substantive RICO claim that are foundational to Plaintiff's Complaint.

    1.    There is no unlawful act on which Plaintiff's RICO claim can be predicated. At bottom, his RICO claim rests on the demonstrably incorrect premise that HCLA made false statements to DOL in connection with applications it submitted for H-1B visas. As HCLA explains in its motion to dismiss, Plaintiff fundamentally misunderstands the applicable regulations and, as a result, fails to allege any inaccuracy in the statements HCLA made. *See* ECF No. 27 at 8-13 ("HCLA Br.").[2]

    2.    Plaintiff has failed to exhaust the DOL administrative procedures designed to address the supposed immigration law violations he alleges, which independently requires dismissal. *See* HCLA Br. 14-20.

---

[2] WDPR adopts and incorporates the arguments made in HCLA's motion to dismiss.

3. Plaintiff has not adequately alleged that HCLA's and WDPR's commercial relationship constituted a RICO "enterprise," *see* HCLA Br. 20-23, or that the one-time layoff of certain WDPR employees exhibited the requisite continuity of conduct to establish a "pattern" of "continuing racketeering activity," *see infra* pp. 10-12.

Second, wholly apart from his failure to allege a substantive RICO claim, Plaintiff's conspiracy allegations must be dismissed as unsupported and impermissible speculation. Plaintiff has not seen and does not purport to know any details about the contract at issue here, relying on its mere existence and his own guesses about its terms to posit an unlawful conspiracy to violate federal immigration law. The inference of unlawful agreement Plaintiff asks the Court to draw from this commercial IT services contract is implausible under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

In sum, when the Complaint's many unsupported conclusory allegations and mistakes of law are stripped away, the ordinary business arrangement on which Plaintiff relies is fully explained by lawful motivations and Plaintiff's conspiracy claims fail.

The Complaint should be dismissed with prejudice.

## ARGUMENT

### I. Standard of Review

Although the Court must generally assume that the allegations in the complaint are true on a motion to dismiss pursuant to Rule 12(b)(6), the Court is not required to accept the veracity of legal conclusions or factual allegations that are not "well-pleaded." *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010). Further, "[b]ecause of the specificity of the RICO statute and the stigma associated with charges of racketeering, courts have held RICO claims to enhanced specificity of pleading requirements." *Club Car, Inc. v. Club Car (Quebec)*

*Imp., Inc.*, 276 F. Supp. 2d 1276, 1283 (S.D. Ga. 2003), *aff'd*, 362 F.3d 775 (11th Cir. 2004). Where "a plaintiff asserts RICO and RICO conspiracy claims" and "the underlying allegations assert claims that are akin to fraud, the heightened pleading standards of Rule 9(b) apply to the RICO claims." *Miccosukee Tribe of Indians of Fla. v. Cypress*, 814 F.3d 1202, 1212 (11th Cir. 2015).

In addition, under Rule 8, every plaintiff must plead enough facts to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Allegations that are merely "compatible with" a claim of unlawfulness do not suffice, and where the facts alleged are "more likely explained by[] lawful" conduct, the complaint fails. *Id.* at 680. Those rules apply with special force where, as here, a plaintiff asks the court to draw inferences of *criminal* intent from nothing more than a defendant's ordinary business activity. *See, e.g., RSM Prod. Corp. v. Freshfields Bruckhaus Deringer U.S. LLP*, 682 F.3d 1043, 1051 (D.C. Cir. 2012) (plaintiff's theory that law firm provided legal services "to further [client's alleged] criminal endeavor" failed to state RICO claim, as firm's conduct was "more likely explained by its normal business practice of providing legal services for and representing clients in arbitration" (internal citation omitted)).

In pleading the conspiracy claims against WDPR, the Complaint has not "plausibly, under *Twombly*, or particularly, under Rule 9(b), allege[d]" the elements of those claims. *American Dental Ass'n*, 605 F.3d at 1293. Each failure independently requires dismissal of the claims against WDPR.

II. **Plaintiff's RICO Conspiracy Claim Should Be Dismissed**

To plead a RICO conspiracy claim under 18 U.S.C. § 1962(d), a complaint must allege both an underlying substantive RICO violation and an illegal agreement to violate a substantive

4

provision of RICO. *See Spence-Jones v. Rundle*, 991 F. Supp. 2d 1221, 1255 (S.D. Fla. 2013). Where the complaint fails to plausibly allege a substantive RICO violation, and the conspiracy claim includes no new allegations, the conspiracy claim necessarily fails as well. *See Viridis Corp. v. TCA Global Credit Master Fund, LP*, __ F. Supp. 3d __, 2015 WL 9688202, at *14 (S.D. Fla. Dec. 17, 2015).

To state his RICO conspiracy claim against WDPR, then, Plaintiff must plead facts with the requisite specificity showing WDPR (1) knowingly entered a conspiratorial agreement to (2) conduct (3) an enterprise (4) through a pattern (5) of racketeering activity—*i.e.*, qualifying predicate acts. *See Viridis Corp.*, 2015 WL 9688202, at *5, 15. Plaintiff fails to satisfy the first element because the Complaint sets forth no facts even remotely showing that WDPR knew that HCLA planned to violate federal immigration law or agreed that HCLA would do so. The conspiracy claim independently fails because Plaintiff does not come close to pleading an underlying substantive RICO violation with the requisite particularity. As discussed in HCLA's motion to dismiss and addressed briefly below, the Complaint fails to plead any unlawful predicate act or the requisite RICO "enterprise" and "pattern" of alleged misconduct.

### A. Plaintiff Fails To Allege Facts Plausibly Establishing An Unlawful Agreement

It is difficult to discern the basis on which the Plaintiff believes this Court could plausibly infer that WDPR conspired to violate RICO. Only two factual allegations appear even remotely pertinent. First, the Complaint alleges that HCLA and WDPR entered into a "long-term" "written contract," outlining the "duties and projects" HCLA would perform for WDPR. Compl. ¶ 20. Plaintiff has not seen the agreement, so he can only speculate that it specifically requires HCLA to hire H-1B visaholders (as opposed to simply requiring HCLA to provide IT services). *See id.; see also United States ex rel. Steury v. Cardinal Health, Inc.*, 735 F.3d 202, 207 (5th Cir.

2013) ("merely descriptive or conclusory allegations about the ... contracts were insufficient" under Rule 9(b)). Second, the Complaint alleges that "a senior [WDPR] manager, Mr. Tilak Mandadi, [WDPR's] SVP, CIO and Global Principal Tech Officer" maintains a "Linked-In [*sic*] page" indicating he had previously worked at other companies. Compl. ¶ 19. On "information and belief," it further alleges that those other companies also "contracted with HCL (and the like) to replace IT workers with H-1B visaholders." *Id.* On this purely speculative basis, the Complaint draws the inference that WDPR "knew full well" that HCLA would make false statements to the federal government and thereby violate federal law. *Id.* ¶ 67. These allegations fall far short of even beginning to show that WDPR knowingly and willfully agreed that HCLA would violate federal immigration law. *See, e.g., S. Intermodal Logistics, Inc. v. D.J. Powers Co.*, 10 F. Supp. 2d 1337, 1360 (S.D. Ga. 1998) (liability "for violating § 1962(d)" applies only if defendant "knowingly and willfully joins a conspiracy which itself contains a common plan or purpose to commit two or more predicate acts" (citing *Salinas v. United States*, 522 U.S. 52, 62-64 (1997)).

Even accepting as true the Complaint's inaccurate allegations regarding the contract between HCLA and WDPR, Plaintiff nowhere alleges (and could not allege) that it is inherently unlawful to agree to provide IT services using a workforce that includes H-1B visaholders. Plaintiff's theory of unlawful conspiracy thus depends on the allegation "on information and belief" (Compl. ¶ 19) about one WDPR executive's supposed knowledge of the requirements of federal immigration law, which he allegedly acquired from work with HCLA or other unnamed firms before coming to WDPR. From that allegation, Plaintiff asks the Court to conclude that WDPR knew the applicable legal requirements, knew HCLA supposedly intended to violate them, and agreed that HCLA would do so.

A fatal flaw in Plaintiff's theory is that, even on the facts pleaded in the Complaint, HCLA *complied* with the applicable legal requirements. Plaintiff simply gets those requirements wrong. *See* HCLA Br. 8-13. Because the Complaint alleges no actions by HCLA that are inconsistent with the requirements of federal law, it alleges no plausible basis whatever to suppose that WDPR could have anticipated, much less agreed to, any *unlawful* action. *See Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1269 (11th Cir. 2004) (to state RICO conspiracy claim, "parties must have agreed to commit an act that is itself illegal—parties cannot be found guilty of conspiring to commit an act that is not itself against the law").

Even if Plaintiff had sufficiently alleged that HCLA made false representations to the Department of Labor—which, given his legal errors, he has not—Plaintiff fails to allege facts showing that WDPR knew or agreed that HCLA would make them. Plaintiff provides no meaningful detail concerning Mr. Mandadi's supposed work with prior employers. *See* Compl. ¶ 19. The Complaint says nothing about transactions involving Mr. Mandadi's prior employers; when those transactions occurred; whether they were in any way similar to the WDPR contract here; what "sponsoring employers" were involved and whether they were H-1B dependent or the employees for whom the H-1B visas were obtained were "exempt"; whether those "sponsoring employers" made any false statements on H-1B applications; and whether Mr. Mandadi had any knowledge about such false statements even if they occurred. *See id.*[3]

Plaintiff thus offers only bare allegations about a WDPR executive's work with other companies that supposedly contracted with other IT service providers that used H-1B visa holders. Those allegations, lacking the requisite "factual amplification," are plainly insufficient

---

[3] The Complaint is yet more conclusory when it refers to others at WDPR and alleges with no detail that "[WDPR] upper management, such as Mr. Mandadi, who had extensive experience entering into contracts for H1B visaholders at other companies, knew full well … yet agreed with HCL[.]" Compl. ¶ 67.

to support the speculative inference that WDPR agreed with HCLA to violate the law. *DZ Bank AG Deutsche Zentral-Genossenschaftsbank v. McCranie*, No. 3:10-cv-222, 2010 WL 4739521, at *2 (M.D. Fla. Nov. 16, 2010) (discussing *Iqbal* and *Twombly*). Indeed, the Complaint does not even provide a plausible basis for inferring that WDPR—which did not submit any of the applications at issue here—was aware of the requirements governing HCLA's submission of H-1B visa applications. *See Aldana v. Del Monte Fresh Produce, N.A.*, 416 F.3d 1242, 1248 (11th Cir. 2005) ("unwarranted deductions of fact are not admitted as true on a motion to dismiss" (internal quotation marks omitted)).

No criminal agreement can be inferred from Plaintiff's empty generalizations. As the Supreme Court has made clear, allegations of an unlawful conspiracy must "plausibly suggest[]" an agreement to violate the law. *Twombly*, 550 U.S. at 557. Allegations that are merely "compatible with" a claim of unlawful conspiracy do not suffice, and where—as here—the facts alleged are "more likely explained by[] lawful" conduct, the complaint fails. *Iqbal*, 556 U.S. at 680. Entrusting third-party IT companies with certain of a corporation's IT functions has long been common practice. The Complaint contains not a single plausible allegation to bridge the gap between a commonplace commercial outsourcing arrangement and the knowing conspiracy to violate federal immigration law that Plaintiff asserts. *See American Dental Ass'n*, 605 F.3d at 1290, 1295 (court may "infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer"; thus, business's "participation in trade organizations provides no indication of conspiracy" (internal quotation omitted)); *see also RSM Prod. Corp.*, 682 F.3d at 1051 (affirming dismissal of RICO conspiracy claim where law firm's conduct was more likely explained by its normal business practice of representing clients); *SD3, LLC v. Black & Decker*

*(U.S.) Inc.*, 801 F.3d 412, 443 (4th Cir. 2015) (Wilkinson, J., concurring in part and dissenting in part) ("*Twombly* counsels that we not leap to pejorative explanations when legitimate business considerations are more likely at play.").

The Eleventh Circuit regularly affirms dismissals of RICO conspiracy claims based on similarly thin allegations of a conspiratorial agreement. *See, e.g., American Dental Ass'n*, 605 F.3d at 1294 (rejecting RICO conspiracy claim where plaintiff relied on "the kinds of 'formulaic recitations' of a conspiracy claim that the Court in *Twombly* and *Iqbal* said were insufficient"); *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 140 (11th Cir. 2011) (affirming dismissal of RICO conspiracy claim because plaintiff "did not plausibly allege sufficient facts regarding the defendants' agreement to engage in" conduct substantively barred by RICO); *see also Spence-Jones*, 991 F. Supp. 2d at 1255 ("conclusory language that each Defendant 'knowingly agreed and conspired'" insufficient to allege RICO conspiracy).

### B. Plaintiff Fails To State A Substantive RICO Claim

Plaintiff's RICO conspiracy claim also fails because the Complaint does not adequately plead a substantive RICO violation. As set forth in HCLA's motion to dismiss:

- The Complaint fails to allege that HCLA violated the law and thus *fails to establish a RICO predicate*. As HCLA shows, contrary to Plaintiff's misstatement of the applicable H-1B visa regulations, it was not required to make two of the statements Plaintiff supposes it made, and the third supposed statement was accurate—not false—under a proper understanding of the relevant federal regulations. *See* HCLA Br. 8-13.

- Plaintiff *has not exhausted administrative remedies* available to an aggrieved party contesting alleged misstatements in H-1B visa applications. Where "a regulatory statute afford[s] administrative remedies," an unexhausted claim of non-compliance "cannot form the basis for a civil RICO claim." *McCulloch v. PNC Bank Inc.*, 298 F.3d 1217, 1227 (11th Cir. 2002); *see also Palmer v. Trump Model Mgmt., LLC*, __ F. Supp. 3d __, 2016 WL 1544740, at *4 (S.D.N.Y. Mar. 23, 2016) (dismissing RICO claim premised on alleged misstatements in H-1B application because "[a]llowing Plaintiff to use the civil RICO statute to redress substantive violations of the INA would thwart

9

Congress' careful, comprehensive scheme to remedy violations falling within the INA's scope" (internal quotation omitted)); HCLA Br. 14-20.

- Plaintiff *fails to plead facts sufficient to show an unlawful "association-in-fact" RICO enterprise* because the Complaint alleges nothing more than that WDPR and HCLA entered into a lawful commercial relationship to further their respective businesses. *See, e.g., Ray v. Spirit Airlines, Inc.*, 126 F. Supp. 3d 1332, 1342 (S.D. Fla. 2015) ("Plaintiffs do not plausibly allege that Spirit is part of a separate RICO enterprise merely by showing that it hires outside developers, marketers, and software designers, as most large corporations do."); *see also* HCLA Br. 20-23.

Each of these failures independently suffices to defeat Plaintiff's substantive RICO claim, and his RICO conspiracy claim with it. *See Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, No. 14-cv-6016, 2015 WL 7568213, at *7 n.8 (M.D. Fla. Nov. 25, 2015) (Presnell, J.).

In addition, Plaintiff's substantive RICO claim fails because the Complaint does not adequately allege a "pattern" of *"continuing* racketeering activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989) (emphasis in original). The element of continuity "is crucial to a valid RICO claim" because it ensures that the conduct alleged constitutes "the sort of offense that RICO is designed to address"—specifically, "planned, ongoing, [and] continuing" activity. *Jackson*, 372 F.3d at 1264-65; *see also Ward v. Nierlich*, 617 F. Supp. 2d 1226, 1239 n.20 (S.D. Fla. 2008) (noting that "RICO's continuity requirement serves a crucial gate keeping function"). Plaintiff's allegations of a purported "pattern" of predicate acts exhibiting "continuity" are entirely conclusory. *See* Compl. ¶ 48. In fact, the Complaint makes clear that Plaintiff's substantive RICO claim is based entirely on a one-time layoff of certain WDPR employees effective January 30, 2015. *See id.* ¶¶ 12, 15. A one-time layoff cannot satisfy RICO's continuity requirement.

Courts distinguish between two types of continuity: "closed-ended" and "open-ended." *Jackson*, 372 F.3d at 1265-66. Neither type of continuity is properly pleaded here.

Closed-ended continuity requires proof of "'a series of related predicates extending over a substantial period of time.'" *Jackson*, 372 F.3d at 1265 (quoting *H.J. Inc.*, 492 U.S. at 242). That requirement "cannot be met" by allegations of a pattern of predicate acts "lasting less than a year." *Id.* at 1266. Further, where RICO allegations concern only a single venture "with a discrete goal, the courts have refused to find a closed-ended pattern of racketeering" even if the conduct "took place over longer periods of time." *Id.* at 1267. Here, notwithstanding conclusory allegations to the contrary, *see* Compl. ¶ 48 (RICO enterprise "extend[ed] over a multi-year period of time (a substantial period of time)"), the facts pleaded show only that the alleged "enterprise" had a "discrete goal" that was achieved through the layoffs announced in October 2014 and effective January 30, 2015, *Jackson*, 372 F.3d at 1267; *see, e.g.*, Compl. ¶¶ 12, 15. Such allegations are insufficient to establish closed-ended continuity. *See Young v. W. Coast Indus. Relations Ass'n, Inc.*, 763 F. Supp. 64, 73 (D. Del. 1991) (dismissing RICO claim on continuity grounds where employer's conduct caused "a single basic injury, the unilateral implementation of new terms and conditions into an existing collective bargaining agreement" during "a period of, at most, eleven to fourteen months"), *aff'd*, 961 F.2d 1570 (3d Cir. 1992).

Open-ended continuity requires a plaintiff to show that the alleged predicate acts were part of the enterprise's "regular way of doing business." *Jackson*, 372 F.3d at 1267 (citing *H.J. Inc.*, 492 U.S. at 242-43). Plaintiff seeks to satisfy that requirement only by asserting it. The Complaint says no more than that "the predicate offenses are part of the HCL-[WDPR] Enterprise's regular way of doing business." Compl. ¶ 48. This is precisely the type of "formulaic recitation of the elements of a cause of action" that fails to state a claim under Rule 8. *American Dental Ass'n*, 605 F.3d at 1291. Thus, Plaintiff has failed to establish open-ended continuity. *See Ferrell v. Durbin*, 311 F. App'x 253, 257 (11th Cir. 2009) (per curiam) (plaintiff

failed to plead open-ended continuity where alleged predicate acts had "a specific objective and a natural ending point"); *see also Jackson*, 372 F.3d at 1268 (no open-ended continuity where "defendants' actions ... were a unique, first-time occurrence").

### III. Plaintiff's Florida Civil Conspiracy Claim Should Be Dismissed

Plaintiff's claim for civil conspiracy under state common law (Count III) also fails. Under Florida law, "[t]he elements that a plaintiff must allege for a conspiracy claim are that (1) two or more parties (2) agree (3) to commit an unlawful act." *American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1067-68 (11th Cir. 2007). Plaintiff fails to allege two of these elements—an unlawful act and a conspiratorial agreement to commit that act. *See supra* pp. 5-9; HCLA Br. 8-13, 23-24. Further, Plaintiff's failure to exhaust his administrative remedies bars his state-law civil conspiracy claim. *See supra* p. 9-10; HCLA Br. 14-20.

Plaintiff's civil conspiracy claim also fails for an additional, independent reason: Under Florida law, "a cause of action for civil conspiracy exists ... only if the basis for the conspiracy is an independent wrong or tort which would constitute a cause of action if the wrong were done by one person." *Blatt v. Green, Rose, Kahn & Piotrkowski*, 456 So. 2d 949, 950-51 (Fla. 3d DCA 1984) (internal quotation omitted); *see also Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1217-18 (11th Cir. 1999) ("Under Florida law, an actionable conspiracy requires an actionable underlying tort or wrong." (internal quotation and brackets omitted)). For example, in *Regal Marble, Inc. v. Drexel Investments, Inc.*, 568 So. 2d 1281 (Fla. 4th DCA 1990), the plaintiff's claim that the defendants conspired to offer false statements in judicial proceedings failed because Florida law does not recognize a private cause of action for giving false statements in a judicial proceeding. *Id.* at 1282-83. Here, there is no private right of action under either federal or Florida law to assert violations of the federal statute and regulations governing the H-1B visa

program. *See* HCLA Br. 14-20; *see also Venkatraman v. REI Sys., Inc.*, 417 F.3d 418, 423-24 (4th Cir. 2005) (holding that "an implied private right of action ... is not implied under 8 U.S.C. § 1182(n)").[4] Because Plaintiff could not bring a claim under these provisions "if the [alleged] wrong were done by one person," he cannot assert a claim for civil conspiracy to violate those provisions, and thus the conspiracy claim against WDPR and HCLA must be dismissed. *See Blatt*, 456 So. 2d at 950-51.

## CONCLUSION

For the foregoing reasons, and those presented in HCLA's motion to dismiss, Plaintiff's Complaint should be dismissed with prejudice.

This 13th day of May, 2016.

                                                          Respectfully submitted,

                                                          /s/ Mary Ruth Houston

                                                          Mary Ruth Houston (Bar No. 834440)
                                                          SHUTTS & BOWEN LLP
                                                          300 South Orange Ave., Suite 1000
                                                          Orlando, FL 32801
                                                          Telephone: 407-835-6939
                                                          Facsimile: 407-425-8316
                                                          E-mail: mhouston@shutts.com

                                                          David W. Ogden (*pro hac vice*)
                                                          WILMER CUTLER PICKERING
                                                             HALE and DORR LLP
                                                          1875 Pennsylvania Avenue, NW
                                                          Washington, D.C. 20006
                                                          Telephone: 202-663-6440
                                                          Facsimile:  202-663-6363
                                                          E-mail: david.ogden@wilmerhale.com

---

[4]     Nor is there a private right of action under 18 U.S.C. § 1546, a federal criminal statute. *See Gonzales v. Caremore Health Plan, Inc.*, No. CV 15-1499, 2015 WL 6394467, at *2 (C.D. Cal. Oct. 22, 2015); *see also Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1303 (11th Cir. 2008) (rejecting notion that Congress authorized "a federal private right of action any time a civil plaintiff invokes a federal criminal statute"); *Madison v. Adams-Jones*, No. 3:06cv219, 2006 WL 2471491, at *2 (N.D. Fla. Aug. 23, 2006) (federal criminal statutes "do not create a private right of action").

        Alan Schoenfeld (*pro hac vice*)
        Colin Reardon (*pro hac vice*)
        WILMER CUTLER PICKERING
          HALE and DORR LLP
        7 World Trade Center, 250 Greenwich St.
        New York, NY 10007
        Telephone: 212-230-8800
        Facsimile: 212-230-8888
        E-mail: alan.schoenfeld@wilmerhale.com
        E-mail: colin.reardon@wilmerhale.com

*Counsel for Walt Disney Parks and Resorts U.S., Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that I have this 13th day of May, 2016, electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will automatically send e-mail notification of such filing to the following attorneys of record:

>Sara Blackwell
>The Blackwell Firm
>1800 2nd St. Ste. 882
>Sarasota, FL 34236
>Telephone: 941-961-3046
>E-mail: sara@theblackwellfirm.com
>
>Richard S. Dellinger
>LOWNDES DROSDICK DOSTER KANTOR & REED, P.A.
>215 N. Eola Drive
>Orlando, FL 32801
>Telephone: 407-418-6480
>Facsimile: 407-843-4444
>E-mail: richard.dellinger@lowndes-law.com
>
>Charles B. Casper
>MONTGOMERY McCRACKEN WALKER & RHOADS LLP
>123 South Broad St.
>Philadelphia, PA 19109
>Telephone: 215-772-1500
>Facsimile: 215-731-3750
>E-mail: ccasper@mmwr.com

>/s/ Mary Ruth Houston
>Mary Ruth Houston

ORLDOCS 14700057 1